IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 8, 2017

**STATE OF TENNESSEE v. EDWARD NOLAN LEE THOMAS**

**Appeal from the Criminal Court for Davidson County**
**Nos. 2016-B-1146 & 2016-I-802          J. Randall Wyatt, Jr., Judge**

_____

**No. M2017-00040-CCA-R3-CD**

_____

The Defendant, Edward Nolan Lee Thomas, pleaded guilty to aggravated burglary and theft of property valued at less than $500. By agreement, the Defendant's sentence was four years for the burglary conviction, concurrent with a sentence of eleven months, twenty-nine days for the theft conviction, with the trial court to determine the manner of service. The trial court subsequently ordered the Defendant to serve the sentences in confinement. On appeal, the Defendant contends that the trial court erred when it denied him judicial diversion and imposed a sentence of continuous confinement. After a thorough review of the record and applicable law, we affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

Dawn Deaner, District Public Defender; Melissa K. Bourne (at hearing) and Emma Rae Tennent (on appeal), Assistant District Public Defenders, Nashville, Tennessee, for the appellant, Edward Nolan Lee Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Glenn R. Funk, District Attorney General; and Addie B. Askew, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Background and Facts**

On October 26, 2016, the Defendant pleaded guilty in separate indictments to aggravated burglary and theft of property valued at less than $500. By agreement, the trial

court imposed a sentence of four years for the burglary conviction and eleven months and twenty-nine days for the theft conviction. The trial court advised the Defendant that, in accordance with the parties' agreement, it would determine the manner of service of his sentence. The State recited the following facts as the basis for the acceptance of the Defendant's guilty pleas:

> Your Honor, had this case gone to trial . . . the State's proof would have shown that on April 8th of 2016 a burglary occurred at a residence located at [ ] Summit Avenue here in Davidson County. The victim Samuel Stratton was the resident at that location. $3,500 worth of personal property was taken. The window showed signs of forced entry and a latent print was recovered from that window seal and that matched to [the Defendant.]
>
> . . . .
>
> Had [the second case] gone to trial the State's proof would have shown that on September 1, 2016 neighbors of [ ] Waldkirch Avenue, here in Davidson County, saw two men in a Dodge Intrepid going into a shed at their neighbor's house taking items from the shed. Officers located the gold Dodge Intrepid that the neighbors had described and the [Defendant] was in that car. He stated under *Miranda* that he had taken a trimmer, a work light, and a ladder from the shed and that he did not know the owner and that he did not have permission to take the items or be on the lot. The victim, Ms. Smith, also stated that she had not given anyone permission to go in the shed or take her belongings. The amount of property that was taken was $130[.]

The trial court subsequently held a sentencing hearing, during which the following evidence was presented: Officer Jonathan McGowan testified that he was employed by the Metropolitan Police Department and that he investigated the burglary of Samuel Stratton's home. Mr. Stratton told him that his home had been broken into and that a firearm, automatic rifle, electronics, and some shoes had been stolen. Officers lifted fingerprints from a window at the home that was identified as the point of forced entry. An analysis of the fingerprint revealed that it matched the Defendant's fingerprints in the police department crime lab's computer system. The stolen property was estimated to be valued at $3,500. The Defendant was later arrested, given his Miranda warnings, and gave a statement that he had participated in the burglary as a "lookout" and was inside the residence while the burglary was occurring.

Mr. Stratton testified that he was the victim of the burglary and clarified that an Xbox gaming system, three pairs of shoes, an AR-15 semiautomatic rifle, gun accessories, a laptop, and over 240 rounds of ammunition were stolen from his home. Mr. Stratton

calculated the value of the items stolen at $5,155. Mr. Stratton testified that he worked at HCA and as a security guard. Since the burglary, Mr. Stratton testified that his daughters were afraid to sleep in their rooms, and his wife was frightened when he was away. His wife changed her work schedule to allow her to work from home, and his job allowed him to do the same so that someone was present at the home during the day, which made his family feel safer. Mr. Stratton reduced his working hours at night so he could be present to make sure his family was "okay." Mr. Stratton asked that the Defendant be ordered to serve his sentence in confinement.

Officer Shedie Herbert testified that he responded to the scene at Waldkirch Avenue after the victim's neighbors called police and reported two men stealing from the residence's shed. The stolen items were a ladder, a weed trimmer, and a work light. He located the Defendant and spoke with him about the missing items, and the Defendant stated that he had been at the residence doing yard work. He later said that he did not have permission to be at the residence and was not given access to the shed but that he gained entry because of a broken lock. He admitted that he did not have permission to take the stolen items.

The victim at the Waldkirch Avenue residence wrote a letter, which the trial court admitted into evidence. She wrote that she had been burglarized three separate times at the Waldkirch Avenue residence and that her sense of security was gone, and she could no longer live alone. She wrote that the Defendant lived in the neighborhood and that made her especially upset.

Claudia Hampton testified that she was the Defendant's mother and that he was twenty-one years old at the time of the hearing. Together with her parents she raised the Defendant in a close family, and the Defendant did well in school and did not get into trouble as a teenager. The Defendant received a partial scholarship to play college football, but he lost his scholarship due to complications with his diabetes. Ms. Hampton was unable to continue paying for his education, so the Defendant returned home and began working at UPS. Her mother, the Defendant's grandmother, with whom he had a close relationship, died of cancer soon after, and the Defendant became depressed and withdrawn. The Defendant was arrested twice and then revealed to Ms. Hampton that he had a drug problem.

Ms. Hampton testified that she was worried about the Defendant being in jail without the proper care for his diabetes and other ailments and stated that he could be a productive citizen in society. The beginning of his criminal activity only happened after his grandmother died, before which the Defendant was a caring, helping, and well-mannered person. Ms. Hampton testified that the Defendant could live with her if released into the community and that he had support from her and several longtime family

friends.

The Defendant testified that his life was going well until he found out his grandmother had cancer and then things started to "go downhill." Her illness "hurt" the Defendant because they did not have the same connection as in the past, and he could not be around her so he distanced himself from his family. His special relationship with his grandmother meant that she did not judge him and would understand where he was coming from in a way his mother could not. After he returned home from college and his grandmother died, the Defendant began smoking marijuana, taking pills, and using cocaine. When he broke into Mr. Stratton's home, the Defendant was high, and he "went with the flow," in terms of what his accomplices told him to do. He did not originate the plan to commit the burglary; he simply went along with it. The Defendant stated that he never meant harm to the victim or his family and was truly sorry.

The Defendant agreed that he was released from jail on bond and was arrested again three months later for the second theft. The Defendant stated that he needed help with his drug problem and had been admitted to an intensive outpatient treatment program. He expressed a desire to be a role model for the children in his family and at his church and stated that he would get another job.

At the conclusion of the hearing, the trial court stated that it was considering the testimony of the victims, the Defendant, and his family. The trial court stated that it appreciated the Defendant's mother's testimony about his family situation but also considered what Mr. Stratton had testified to about his family feeling fear and his being unable to work as many hours because of his wife's fear and his children being nervous following the burglary. The trial court stated that, because of this, it did not think this was an appropriate case for the Defendant to be released into the community with an order to attend drug treatment. "Intending to help [the Defendant] in the long run," the trial court stated that the Defendant's case was an appropriate one for some time to be served, particularly in order to avoid depreciating the seriousness of the crime. The trial court stated that it considered breaking into someone's home and causing fear to the home's residents a serious crime and that the victims deserved the trial court's "support." The trial court noted the Defendant's "serious" drug problem and stated that he could get treatment while in jail. Accordingly, the trial court placed the sentence into effect for the aggravated burglary conviction, a four-year sentence, and the sentence for the theft conviction, a sentence of eleven months and twenty-nine days, which the trial court ordered would run concurrently with each other and be served in the CCA workhouse. The trial court ordered the Defendant to participate in a drug rehabilitation program and stated that the trial court would review the Defendant's case again once he had completed the program. The trial court stated that alternative sentencing was not appropriate in this case. It is from this judgment that the Defendant now appeals.

## II. Analysis
## A. Denial of Judicial Diversion

The Defendant argues on appeal that the trial court erred when it declined to place the Defendant on judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. He contends that the trial court failed to address the required *Electroplating* and *Parker* factors and thus, a presumption of reasonableness does not apply to the trial court's imposition of the Defendant's sentence. He contends that he was a good candidate for judicial diversion and that his offenses did not constitute "exceptional circumstances" outweighing the factors in favor of judicial diversion. The State responds that the trial court properly took into account the required factors when considering judicial diversion and that its decision not to grant the same was presumptively reasonable. We agree with the State.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2014). The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense, a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i). Eligibility does not automatically entitle the defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed eligible for judicial diversion, the trial court must

consider several factors when deciding whether to grant judicial diversion. Due to the similarities between pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

> [A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997).

When the trial court considers the common law factors, "specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion," this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *State v. King*, 432 S.W.3d 316, 327 (Tenn. 2014). Our Supreme Court has stated:

> Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id.* Failure to consider the common law factors results in loss of the presumption of reasonableness, and this Court is required to conduct a *de novo* review or remand to the trial court for reconsideration. *Id.*

The record in this case demonstrates that the trial court considered the factors and identified those specifically applicable to this case. The trial court considered the seriousness of the Defendant's offenses and the impact on the victims and their families. It further considered the Defendant's admitted drug problem, as well as his family support system and desire to be rehabilitated. In considering all the factors, the trial court concluded that the Defendant's thefts and their impact on the lives of the victims outweighed the factors favoring the grant of judicial diversion.

Our review of the record reveals that there is substantial evidence to support the trial court's decision. The Defendant committed two thefts within months of each other and caused his victims to change their lives because of their fear and feeling of lack of security in their homes. The Defendant testified that his drug use was a factor when he committed the offenses and that he had a drug problem. The trial court's decision largely was based on the seriousness of the offenses, to which it gave great weight in light of the victims' testimony and statements that they were unable to continue with their normal lives because of the Defendant's actions. Based upon this evidence, we cannot conclude that the trial court abused its discretion in denying the Defendant judicial diversion. We reiterate that the trial court was not required to recite its consideration of each factor relevant to judicial diversion but only the one or ones it found relevant. The Defendant is not entitled to relief.

## B. Sentence of Confinement

The Defendant also argues that the trial court erred in imposing a sentence of continuous confinement and that the statutory factors considered when ordering confinement are not applicable to the Defendant's case. The State responds that the trial court properly exercised its discretion when it ordered the Defendant's sentence to be served in confinement based on the seriousness of the offenses and their effect on the victims. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, 380 S.W.3d at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion

standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2012); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2014) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6) (emphasis added).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

The Defendant argues that factors (A) and (C) are not applicable to his case. The trial court considered the relevant factors and applied factor (B) to the Defendant's case based on the evidence it listed in its findings in open court. The trial court specifically stated that it was imperative to confine the Defendant in order to avoid depreciating the seriousness of the crime. It further noted that the Defendant had a "serious" drug problem that could be addressed while he was incarcerated, and it ordered drug treatment, with the promise that it would review the case again after the Defendant completed treatment. The judgments entered by the trial court reflect that the incarceration would take place at the CCA workhouse. As we previously explained, there was substantial evidence to support the trial court's findings, and we conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve his sentence in confinement. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE